# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JOCELYN A. ORIO, | CIVIL CASE NO. 14-00023 |
| Plaintiff, | |
| vs. | **ORDER**<br>**Re: Motion for Reconsideration** |
| DAL GLOBAL SERVICES, LLC, | |
| Defendant. | |

Before the court is the Motion for Reconsideration ("Motion") filed by Plaintiff Jocelyn A. Orio. ECF No. 48. After reviewing the parties' submissions, and relevant caselaw and authority, the court hereby **DENIES** the Motion for the reasons stated herein.

## A. BACKGROUND

On December 24, 2014, Plaintiff filed a Complaint against DAL Global Services LLC. ECF No. 1. On January 6, 2016, Defendant filed a Motion for Summary Judgment, which this court granted on September 26, 2016. ECF Nos. 26 and 44.

On October 11, 2016, Plaintiff filed the instant Motion for Reconsideration on the ground that the court failed to consider material facts when it granted Defendant's motion for summary judgment. ECF No. 48.

## B. DISCUSSION

A "motion for reconsideration" is treated as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) if it is filed within twenty-eight days from entry of judgment, as provided for under said rule. *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-

- 1 -

99 (9th Cir. 2001). The Ninth Circuit has held that relief under Rule 59(e) is "an extraordinary remedy which should be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 James Wm. Moore *et al.*, *Moore's Federal Practice* § 59.30[4] (3d ed. 2000). A Rule 59(e) motion "may not be used to relitigate the same matters already determined by the court." 12 James Wm. Moore *et al.*, *Moore's Federal Practice* § 59.30[6] (3d ed. 2015).

Civil Local Rule of Practice ("CVLR") 7(p) also provides that a motion for reconsideration is generally disfavored and may only be made on the following grounds: "(A) a material difference in fact or law from that represented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (B) the emergence of new material facts or a change of law occurring after the time of such decision, or (C) a manifest showing of a failure to consider material facts presented to the Court before such decision."[1] CVLR 7(p).

### 1. Material Facts.

Here, Plaintiff contends that the court failed to consider material facts presented to the court and that the Decision and Order dated September 26, 2016 ("D&O") "incorrectly represents" that:

> (1) Orio's second EEOC Charge failed to mention anything about wrongful termination, whereas it did refer to her termination.
>
> (2) Weber required Cruz to write a statement admitting to the 'punket' incident, whereas Cruz was only counseled for calling Orio "Mamasan."
>
> (3) Weber's May 29, 2012 termination letter did not reference Orio's medical condition as grounds for her termination,

---

[1] The Ninth Circuit provides similar grounds such as to correct manifest errors of law or fact upon which the judgment rests; to present newly discovered evidence or previously unavailable evidence; to prevent manifest injustice; or to take account of an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

- 2 -

whereas the letter did reference her medical condition.

 (4) Orio's evidence of discriminatory and retaliatory animus was that she was, "assigned to clean the airplane lavatories," merely "express[ing] contempt for lavatory cleaning," whereas, in fact, Orio complained of the unprecedented action that, "DGS forced her to clean out human waste from the airliner's lavatory with large and heavy equipment she was never trained for, while Weber, Chaparro, and Cruz stood by to watch her suffer in tears."

 (5) Orio was written up for several petty offenses after her November 2011 letter based on "deficiencies in her job performance," whereas, in fact, Orio had presented evidence that these mysterious write-ups were simply fabricated to smear her record and the D&O pointed to no basis upon which to find otherwise.

 (6) Orio waived her claim that she was unlawfully denied a reasonable accommodation for her disability, whereas she has never in fact waived this claim.

ECF No. 48, at 16.

The court will address each issue but as a preliminary matter, the court notes that in issuing its D&O, it thoroughly reviewed all pleadings and exhibits filed and that in crafting its decision, it included only what it found to be relevant and a material fact in its analysis.

### i. Orio's second EEOC Charge failed to mention anything about wrongful termination, whereas it did refer to her termination.

The D&O stated the following:

> On May 16, 2012, Plaintiff submitted a second EEOC complaint with the EEOC, this time adding the claims of retaliation and disability discrimination. Compl. ¶ 26, ECF No. 1.

D&O at 10, ECF No. 44 (footnote omitted). The footnote in that sentence states that "[i]n the Complaint, Orio asserts that the Charge also included a claim of wrongful termination. This claim, however, is not *evident* from the Charge." D&O at 10 n.9, ECF No. 44 (emphasis added).

The D&O did not "incorrectly represent[]" what was contained in the Charge. The

Charge provides boxes to check off as to what the discrimination is based on. In the first EEOC Charge, Orio checked off "race", "sex", and "national origin." Ex. Q, ECF No. 33-2. Thereafter, Orio submitted a second EEOC Charge, wherein she additionally checked off "retaliation" and "disability." Ex. L, ECF No. 27-3. Nowhere did Orio specifically indicate a "wrongful termination" claim on the Charge. Based on this, it was not evident or clearly apparent that Orio was also claiming "wrongful termination." Thus, there was no incorrect representation of facts when the court stated in its footnote that wrongful termination was not evident from the Charge.

Plaintiff argues that "a finding she did <u>not</u> tell the EEOC she was fired would weigh against a finding in Orio's favor of the disputed fact that Orio <u>was</u> fired, as she claims[.]" ECF No. 55, at 2 (emphasis in the original). The D&O found that "Orio suffered adverse employment actions as it relates to . . . her eventual end of employment." ECF No. 44, at 37. The court recognized in the D&O that the reason for termination is in dispute. *Id.* at 38. However, to survive summary judgment, "Orio must demonstrate a causal link between her activity and the employment decision[,]" which this court found that she did not. *Id.* at 38-39.

Therefore, whether Orio's "wrongful termination" claim is evident in her second EEOC Charge, it is immaterial since the court's ruling remains the same, with or without this information.

### ii. Weber required Cruz to write a statement admitting to the 'punket' incident, whereas Cruz was only counseled for calling Orio "Mamasan."

The D&O stated the following:

> In this case, DGS took immediate corrective action against Cruz after it received Orio's November 2011 letter complaining of his behavior. A conversation occurred between Weber, Cruz, and Orio, and Weber required Cruz to write a statement admitting to the "punket" incident. *See* Orio Ex. 4 (Aff. Mart Paraiso), ECF No. 29-6 at ¶¶ 12-13. DGS also counseled Cruz in December 2011 for the use of the term "mamasan" in a manner "not of respect," and to be "careful how [he] speak[s] to

- 4 -

> subordinates." *See* Orio Ex. 5 (Counseling Form), ECF No. 29-7.
>
> . . .
>
> Given the objectively non-severe nature of Orio's allegations, and the fact that Cruz was *formally reprimanded with a conversation and a counseling form*, the evidence is that DGS exercised reasonable care. Therefore, even if Cruz's conduct was discriminatory, which this court has determined it is not, DGS took remedial action that alleviates it of liability for a Title VII claim for sex, race or nationality discrimination.

D&O at 26-27, ECF No. 44 (emphasis added).

The court relied on the affidavit of Mart Paraiso, which states in pertinent part the following, "With both present in the office [Orio and Cruz], Glenn [Weber] asked George [Cruz] to write a statement admitting that George [Cruz], in reference to her cleaning, asked Jocelyn [Orio], 'is that how you clean your punket.' To this, George [Cruz] admitted that he said 'punket' but said he was just joking around." Ex. 4, ECF No. 29-6.

The D&O was clear in that Cruz was asked to write a statement admitting to the "punket" incident and that he was counseled for the use of the term "mamasan." Thus, Cruz was reprimanded with a conversation and a counseling form.

Plaintiff questions the court's finding that "Cruz did not, as the Court found, write any statement admitting to speaking of Orio's 'punket.'" ECF No. 55, at 3. Assuming *arguendo* that there was no written statement made by Cruz as to the "punket" issue, the court nonetheless holds the same finding that DGS took remedial action that alleviates it of liability for a Title VII claim for sex, race or nationality discrimination. Whether there was a *written* admission as to the "punket" issue is not material. When Orio complained about the incidents with Cruz, DGS—through Weber—took action and investigated Orio's complaint. *See* Ex. 3, ECF No. 29-5, at 94-95; and ECF No. 27-1, at 2-3. When confronted by Weber, in the presence of Orio, Cruz admitted to having said "punket." *See* Ex. 4, ECF No. 29-6. Orio's complaint to DGS as to Cruz did not go unnoticed. It was resolved. Orio herself admitted that there were no incidents

- 5 -

with Cruz following the November 7, 2011 letter. ECF No. 29-5, at 97-98.

      **iii.    Weber's May 29, 2012 termination letter did not reference Orio's medical condition as grounds for her termination, whereas the letter did reference her medical condition.**

The D&O stated the following:

> DGS asserts that "[a]s a result of Orio's failure to report to work, notify DGS of her absences, or return any messages left for her, DGS considered her to have abandoned her employment." Weber Decl. ¶ 25; *see also* DGS Ex. M (Recommendation for Termination of Employment), ECF No. 27-3 at 11. Weber recommended to DGS that Orio be terminated on May 29, 2012 because "Orio ha[d] failed to call or show any interest in the company" and "having someone return her badge is not acceptable due to security reasons." *See* DGS Ex. M (Recommendation for Termination of Employment), ECF No. 27-3 at 11.

D&O at 9, ECF No. 44. This paragraph is part of the D&O's factual background under the "disability discrimination and retaliation" section, and it is not part of the court's actual analysis of the disability discrimination and retaliation claims. The court found it unnecessary to enumerate everything that was on the Recommendation for Termination of Employment letter. The court, however, did not disregard the fact that Orio had two additional doctor's notes indicating that "light duty" was needed and as a result, DGS placed Orio on transitional duty as required by DGS's policy. *See* D&O, ECF No. 44, at 6-7.

      Plaintiff asserts that "[a]ny reasonable trier of fact <u>could</u> conclude (which is all that is needed to survive summary judgment) that DGS would not bring up her medical condition in her letter of termination *in the first place* if it did not consider it to be relevant to her termination." ECF No. 55, at 3 (emphasis in the original). The problem with Plaintiff's argument is that she has failed to show how this information is material to the court's analysis as it pertains to her disability discrimination and retaliation claims. The court recognized that while there is factual dispute as to the reason for termination (*see* D&O, ECF No. 44, at 38), to survive summary judgment, "Orio must demonstrate a causal link between her activity and the

- 6 -

Case 1:14-cv-00023   Document 57   Filed 09/30/17   Page 6 of 10

employment decision[,]" which this court found that she did not. *See* ECF No. 44, at 38-39.

      **iv.** **Orio's evidence of discriminatory and retaliatory animus was that she was, "assigned to clean the airplane lavatories," merely "express[ing] contempt for lavatory cleaning," whereas, in fact, Orio complained of the unprecedented action that, "DGS forced her to clean out human waste from the airliner's lavatory with large and heavy equipment she was never trained for, while Weber, Chaparro, and Cruz stood by to watch her suffer in tears."**

Plaintiff is unclear in her motion for reconsideration as to the materiality of the following information, that "Orio complained it was unprecedented that, 'DGS forced her to clean out human waste from the airliner's lavatory with large and heavy equipment she was never trained for, while Weber, Chaparro, and Cruz stood by to watch her suffer in tears.'" *See* ECF No. 48, at 3. Plaintiff later argues in her Reply to Defendant's Opposition that "she was the only woman ever forced to operate heavy sewage equipment . . . only after she engaged in protected activity, and that the very management team in question stood around to watch her cry. At the very least, this is compelling evidence of retaliatory intent." ECF No. 55, at 4 (emphasis in the original).

To establish a *prima facie* case of retaliation, Plaintiff must show that she engaged in a protected activity, that she suffered an adverse employment decision, and that there was a causal link between her activity and the employment decision. ECF No. 44, at 35 (quoting *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997). Once that is met, then the burden shifting framework applies. ECF No. 44, at 35 (quoting *Manatt v. Bank of Am., NA*, 339 F.3d 792 (9th Cir. 2003), and *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000)). In the burden shifting analysis, that is when the parties produce evidence as to whether there was a non-discriminatory reason and if said reason was a pretext for discriminatory motive or intent. *Id.*

In this case, without reaching the burden shifting analysis, Plaintiff is unable to establish a *prima facie* case of retaliation. As noted in the D&O, to survive summary judgment, "Orio

- 7 -

must demonstrate a causal link between her activity and the employment decision[,]" which this court found that she did not. *See* ECF No. 44, at 38-39.

      **v.**    **Orio was written up for several petty offenses after her November 2011 letter based on "deficiencies in her job performance," whereas, in fact, Orio had presented evidence that these mysterious write-ups were simply fabricated to smear her record and the D&O pointed to no basis upon which to find otherwise.**

In Plaintiff's motion for reconsideration, Plaintiff states the following:

> *The D&O makes a sweeping statement, without explanation or citation of the record, that, "The other incidents enumerated by Orio simply demonstrate deficiencies in her job performance rather than improper acts by Cruz."* Presumably, these "other" incidents refer to Orio's contention that DGS, as part of an orchestrated attempt to retaliate against her for complaining about Cruz, began to write her up for petty issues, without her even being aware that she was ever disciplined for any reason, much less given an opportunity to respond to such write-ups, without considering former DGS manager Mart Paraiso's testimony that DGS did not issue 'secret' write-ups, and without considering Orio's deposition testimony that she had neither seen nor heard of these alleged write-ups prior to this litigation.

ECF No. 48, at 3-4 (emphasis added) (footnotes omitted).

Plaintiff questions the following statement in the court's D&O: "The other incidents enumerated by Orio simply demonstrate deficiencies in her job performance rather than improper acts by Cruz." In particular, Plaintiff makes the assertion that such a "sweeping statement" was made "without explanation or citation of the record[.]" *See* ECF No. 48, at 3. The statement in question is preceded by other sentences, and the court points Plaintiff to the entire paragraph contained on page 27, lines 3 through 12 of the D&O, ECF No. 44. That paragraph contains the "other incidents," such as Plaintiff being "written up for being 10 minutes late" and "for wearing black stretch pants that were not proper uniform pants." Further, the D&O properly cited the record. *See* ECF No. 44, at 27:7-9.

Accordingly, the court will not address Plaintiff's speculative argument that the "other

- 8 -

incidents" are "presumably" write-ups on "petty issues." *See* ECF No. 48, at 3-4.

  **vi. Orio waived her claim that she was unlawfully denied a reasonable accommodation for her disability, whereas she has never in fact waived this claim.**

The D&O stated the following:

> At the hearing on the Motion, Orio clarified that she is pursuing a discrimination claim as it pertains to a hostile work environment, and not a claim for failure to accommodate. Therefore, the court will only analyze the claim as it pertains to a hostile work environment. Transcripts ("Tr.") at 103-106 (Mot. Summ. J. Hr'g, May 4, 2016).

ECF No. 44, at 28. This particular paragraph is contained under the "Disability Discrimination Claim" analysis.

  Plaintiff provided a portion of the transcript as part of her motion for reconsideration. *See* ECF No. 48, at 4-14. Therein, counsel for Plaintiff clarified that his client is not actively pursuing a reasonable accommodation request, because she is no longer employed by DGS. *Id.* However, Plaintiff maintains that she was terminated because DGS refused to accommodate. *Id.* at 14. Plaintiff's counsel stated at the hearing that "[t]he means by which they retaliated against her was [by] taking away her accommodation[.]" *Id.*

  While the D&O may not have been artfully worded, the court did address Plaintiff's claim of retaliation by DGS's refusal to accommodate her. Specifically, the D&O states the following:

> As a preliminary matter, this court notes that Orio has asserted a "retaliation" claim under Title VII, but not a constructive discharge claim. *See* Compl. ¶2, ECF No. 1 ("This action is brought pursuant to Title VII . . . for employment discrimination retaliation and the Americans with Disabilities Act . . . ."). The closest reference to a claim for constructive discharge is within her Opposition, stating that "[a]lthough her request to give up all her day shifts was granted, this effectively resulted in a partial constructive discharge." Opp'n at 18, ECF No. 29. This passing reference does not satisfy pleading standards for a constructive discharge claim. Thus, the court will evaluate Orio's claim

as a retaliation claim rather than a constructive discharge claim.

ECF No. 44, at 34 (footnote omitted). Thus, despite the confusing language contained under the disability discrimination claim section of the D&O (as quoted *supra*), the court did not overlook Plaintiff's argument that she was terminated because the company failed to reasonably accommodate her.

### 2. Third element of the Retaliation Claim.

Plaintiff disagrees with the court's analysis of the third element of the retaliation claim, arguing that the May 11, 2012 date is not too far removed from the time Plaintiff engaged in protected activity. *See* ECF No. 48, at 20. Plaintiff attempts to distinguish the caselaw used by this court in its D&O and instead offers other caselaw that this court should adopt.

Plaintiff's argument does not meet one of the three grounds provided under CVLR 7(p) and therefore, this court will not consider Plaintiff's argument as to the third element of the retaliation claim. A Rule 59(e) motion "may not be used to relitigate the same matters already determined by the court." 12 James Wm. Moore *et al.*, *Moore's Federal Practice* § 59.30[6] (3d ed. 2015).

## C. CONCLUSION

This is a matter that was considered and previously determined by the court. Plaintiff has not presented to the court any newly discovered evidence, demonstrated that this court relied on manifest errors of law or fact, or identified any intervening change in the controlling law. Nor has Plaintiff presented any highly unusual or extraordinary circumstances in this case which would otherwise warrant granting the Motion. Accordingly, the court **DENIES** Plaintiff's Motion for Reconsideration.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
    Chief Judge
**Dated: Sep 30, 2017**